IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-02078-SKC-STV

JASON BROOKS,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
ADRIENNE SANCHEZ,
JANET SMITH,
HELENA CHRISTNER, and
RYDER MAY,

    Defendants.

## ORDER

Before the Court is the Recommendation of Chief Magistrate Judge Scott T. Varholak (Dkt. 70) to grant Defendant's Motion to Dismiss In Part the Amended Complaint (Dkt. 50). The Recommendation informed the parties of their 14-day window to file specific objections to the Recommendation. Dkt. 70, p.32 n.13. Plaintiff timely filed Objections to the Recommendation (Dkt. 71) and Defendants filed a Response to the Objections (Dkt. 81). For the reasons shared below, the Court accepts the Recommendation, incorporates it into this Order by reference, and overrules the objections. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

1

## A. LEGAL PRINCIPLES

### 1. Review of a Magistrate Judge's Recommendation

The Court reviews *de novo* any part of a magistrate judge's recommendation that a party properly objects to. Fed. R. Civ. P. 72(b)(3). An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

### 2. Treatment of a Pro Se Plaintiff's Pleadings

A pro se litigant's pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But a pro se litigant must follow the same rules of procedure that govern other litigants, and the Court does not supply additional factual allegations to round out a complaint or construct legal theories on behalf of a pro se litigant. *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). The Court may excuse a pro se plaintiff's failure to cite proper legal authority, confusion about various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements, but it does not act as the pro se plaintiff's advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## B. BACKGROUND

### 1. Allegations Pertinent to the Objections

As laid out more fully in the Recommendation, Plaintiff Jason Brooks is a former inmate of the Sterling Correctional Facility ("SCF"), operated by the Colorado Department of Corrections ("CDOC"). Defendants are the CDOC; Adrienne Sanchez, the Associate Director of Legal Services at SCF; Janet Smith, the CDOC Americans with Disabilities Act ("ADA") Inmate Coordinator; Helena Christner, an SCF Nurse Practitioner; and Ryder May, an SCF Nurse. Plaintiff was incarcerated at SCF from April 28, 2018, through August 16, 2021. He suffers from chronic ulcerative colitis ("UC"), a serious autoimmune disorder diagnosed in 2002. His condition causes severe abdominal pain, fecal urgency, and incontinence, among other symptoms.

To help manage his UC, during his decade of incarceration prior to his transfer to SCF, Plaintiff had typically been housed in wet cells with in-cell toilets. Once transferred to SCF in April 2018, Plaintiff was assigned to a dry cell unit, which lacked an in-cell toilet and required shared restroom use. Within the first three months of his incarceration at SCF, Plaintiff filed various requests for accommodation. First, on June 8, 2018, he renewed a request for a meal pass that he originally made in November 2017, before his transfer to SCF. Next, on July 2, 2018, he filed a request for housing in a wet cell to properly manage his UC symptoms. On July 8, 2018, he sent a follow-up letter to Defendant Smith with additional information to supplement his requests for a meal pass and wet cell.

3

On October 15, 2018, Defendant CDOC denied Plaintiff's request for a wet cell, deeming dry cell housing reasonable, and asserted that there was no documentation of his request for early meal accommodations. The next day, Plaintiff met with Defendant May regarding his UC condition. Following that meeting, Defendant May placed Plaintiff on the list of inmates permitted to receive meals first, on a one-month trial basis, expiring in November 2018. On October 26, 2018, Defendant May reported that, despite being allowed to obtain his meals early, Plaintiff was still having problems getting his meals and that correctional officers refused to allow him to eat. Around this time, Plaintiff wrote a letter to the SCF warden explaining that he would rather die than get his meals without a meal pass. He then began an 18-day hunger strike, which continued until he was granted the meal pass in November 2018, in response to his letter. In March or April 2020, amid the COVID-19 pandemic, Plaintiff's meal pass was revoked for the duration of his time at SCF.

Plaintiff filed this action on August 11, 2023. Dkt. 1. He filed the operative Complaint on February 4, 2024. Dkt. 14. He brings three claims against Defendants: (1) violation of Title II of the Americans with Disabilities Act (ADA); (2) violation of the Eighth Amendment for deliberate indifference to medical needs under 42 U.S.C. § 1983; and (3) First Amendment retaliation under § 1983. *See generally* Dkt. 14; Dkt. 70, p.9. Plaintiff seeks compensatory and punitive damages against Defendants. Concerning his ADA claim, he alleges Defendants violated the ADA "by (1) housing Plaintiff in a 'dry cell', which knowingly caused him unnecessary physical pain and

4

suffering every single day[,] (2) refusing to allow Plaintiff the ability to reasonably obtain his meal, unconstitutionally depriving his access to food and[,] (3) refusing to provide accommodation so Plaintiff could meet with the gastroenterologist or complete medical procedures, acting as medical gatekeepers to interfere with Brooks medical treatment." Dkt. 14, ¶57.

### 2. Judge Varholak's Recommendation

After a carefully thorough analysis, Judge Varholak determined a two-year statute of limitations applies to each of Plaintiff's claims. He concluded that each claim is untimely because they accrued no later than September 24, 2020. Because this action was not filed until August 11, 2023, he determined it falls outside the applicable two-year statute of limitations under § 1983. He further found that equitable tolling does not apply to any of Plaintiff's claims, and no other tolling doctrine saves them, except that Judge Varholak found that Plaintiff's ADA claim is timely under the repeated violations doctrine to the extent it is based on allegations occurring between August 11, 2021, and August 16, 2021.

With those conclusions, Judge Varholak has respectfully recommended that Defendants' Motion to Dismiss (Dkt. 50) be granted and Plaintiff's claims be dismissed, and that Plaintiff be granted leave to amend his complaint for the sole purpose of amending his ADA claim to allege any ADA violations for the period between August 11 and August 16, 2021.

5

### C. ANALYSIS & FINDINGS

**1.    Clear Error Review**

In his objections, Plaintiff says he "tends to agree" with Judge Varholak's analysis of Plaintiff's First and Eighth Amendment claims. Dkt. 71 ("Plaintiff tends to agree with the Magistrate[1] (sic) on its (sic) analysis of his First and Eighth Amendment claims[.]"). In that vein, he made no objection to Judge Varholak's analysis or recommendation concerning the dismissal of those claims. The Court has thus reviewed those sections of the Recommendation for any clear error. Fed. R. Civ. P. 72(b), 1983 Advisory Committee Notes (in the absence of objections the district court reviews the recommendation to satisfy itself that there is "no clear error on the face of the record). There is none on this record.

Judge Varholak's detailed analysis of the application of the two-year statute of limitations to Plaintiff's § 1983 claims, to include his careful consideration of the possible accrual and tolling periods was a sound and correct application of applicable law to the facts of this case. The Court therefore accepts and adopts Judge Varholak's recommendation to dismiss Plaintiff's § 1983 claims regarding the alleged Eighth and First Amendments.

Plaintiff also does not object to Judge Varholak's finding that Plaintiff's Title II ADA claim is governed by a two-year statute of limitations and that, without

---

[1] In federal court, the official title and therefore appropriate reference to those holding Judge Varholak's (and this Court's former position) is "Magistrate Judge" or "Judge." There are no "magistrates" in federal court.

6

tolling, the statute of limitations has expired on that claim. *See generally* Dkt. 71. Like his analysis of Plaintiff's § 1983 claims, Judge Varholak's detailed analysis of the application of the two-year statute of limitations to Plaintiff's Title II ADA claim and the expiration of that period, without tolling, was a sound and correct application of the law to the facts of this case. The Court therefore accepts and adopts Judge Varholak's recommendation in this regard as well.

Plaintiff's objections are limited to Judge Varholak's application of the repeated violations doctrine (rather than the continuing violation doctrine) to his Title II ADA claim, and his recommendation to dismiss that claim but grant Plaintiff leave to amend the complaint for the sole purpose of alleging any ADA violations that occurred in the period between August 11 and August 16, 2021. The Court reviews these objections *de novo*, below.

    **2.**    ***De Novo* Review**

Plaintiff objects that "[t]he Magistrates (sic) error comes down to finding that Defendants (sic) actions in this case denying Plaintiff ADA accommodations were simply 'discrete unlawful acts.'" Dkt. 71, p.2. He argues that "Plaintiff claimed that the decision to deny him ADA accommodation was an official policy decision made by the Defendants[,]" *id.* at p.2, and from this, he argues the continuing violation doctrine instead applies. *See id.* at p.3 ("The Statue of limitations for Plaintiffs ADA claims are controlled by the continuing violations doctrine."). According to Plaintiff, "Defendant CDOC made a decision to deny Plaintiff ADA accommodation as a matter

7

of CDOC policy; despite knowing the harm it was causing [Plaintiff] daily." *Id.* at p.4. He continues:

> The series of separate acts in this case were the repeated denials of ADA accommodations by each defendant, constituting one unlawful act by the CDOC to deliberately violate its "affirmative obligation to accommodate persons with disabilities." . . . Therefore, while individual defendants may be engaged in a single discrete unlawful act—being subject to the repeated violation doctrine—Defendant CDOC's liability in the ADA context encompasses "the combined acts or omissions of several employees." . . . Moreover, Defendant Smith and Sanchez are policy makers and enforcers of CDOC ADA policy in this case, so their decisions to repeatedly deny Plaintiff ADA accommodation were policy decisions and cannot be considered single discrete acts.

*Id.* at pp.5-6 (citations omitted).

Defendants argue Judge Varholak correctly applied the repeated violations doctrine "because it aligns with Plaintiff's allegations that each time he was denied access to the dining hall during his stay at SCF, Defendants violated the ADA." Dkt. 81, p.5. They point out that "Plaintiff alleges that he suffered without a single accommodation following denial of his last request for accommodation on September 24, 2020, through his release on August 16, 2021." *Id.* (citing Dkt. 14, ¶54). And they say his argument for applying the continuing violation doctrine is premised on a theory of municipal liability, which Judge Varholak correctly noted does not apply to the CDOC because it is an arm of the state and not a municipality. *Id.*

The Tenth Circuit's opinion in *Hamer* is controlling and dispositive of Plaintiff's objections. *See Hamer v. City of Trinidad*, 924 F.3d 1093 (10th Cir. 2019). There, the circuit court held that "the repeated violations doctrine applies to claims

8

under Title II of the Americans with Disabilities Act[.]" *Id.* at 1103. It reached this holding applying traditional principles of statutory interpretation with the "text and structure of the statute[ ]" guiding its decision. *Id.* It considered Title II's specific mandate that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity[,]" 42 U.S.C. § 12132; and it concluded this language "suggests that a qualified individual suffers new discrimination and a new injury *each day* that she cannot utilize a non-compliant service, program, or activity—even if the barriers giving rise to her claim were ones she encountered before." *Id.* at 1104 (emphasis in original). Then, looking to the Supreme Court's Title II jurisprudence, it concluded "[t]his 'duty to accommodate,' . . . solidifies that Title II . . . clearly and unambiguously conveys that a non-compliant service, program, or activity gives rise to repeated violations. Failing to act in the face of an affirmative duty to do so axiomatically gives rise to liability." *Id.* at 1105 (citations omitted).

The Tenth Circuit further explained "a public entity does commit a 'new violation' each day that it fails to remedy a non-compliant service, program, or activity. The affirmative, ongoing duty that Title II . . . place[s] upon it mandates as much." *Id.* at 1105.

9

> What matters is whether the individual can fully participate now in the service, program, or activity. The repeated violations doctrine, in turn, accounts for that reality—and, for that matter, encourages public entities to comply with their affirmative and ongoing obligations to accommodate—by giving a qualified individual an avenue for relief any moment that he or she cannot fully participate or is not fully included in a service, program, or activity.

*Id.* at 1106. "In conclusion, based on the plain language of Title II of the ADA . . ., Supreme Court jurisprudence interpreting Title II, and Congress's express statutory purposes in enacting the ADA," the Tenth Circuit held that Title II "clearly and unambiguously require[s] us to acknowledge [it is] subject to the repeated violations doctrine." *Id.* at 1107. *See also Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475, 483 (N.D. Ohio 2007) ("The continuing violations doctrine does not apply in the Title II disability context. It has applied in the employment discrimination context[.]").

The Tenth Circuit in *Hamer* also expressly addressed the scenario Plaintiff's complaint presents. In *Hamer*, the plaintiff argued that "[e]ach time [he] was denied access to [the sidewalks and curb cuts], the City of Trinidad committed discrimination within the meaning of the ADA [.]" *Hamer*, 924 F.3d at 1101 (internal quotations and citation omitted). The Tenth Circuit said "[t]his language is a clear reference to the repeated violations doctrine." *Id.* And that's the same dynamic here.

Plaintiff argues "each time [Plaintiff] attempted to access the chow hall while at the SCF, three times each day, he suffered an injury under Title II." Dkt. 71, p.6; *see also* Dkt. 57, at p.9 . The Court agrees with Judge Varholak that this is exactly the point. As the Tenth Circuit explained, this language is a clear reference to the

10

repeated violations doctrine. And as Judge Varholak accurately explained, this is not a situation where "the first in a series of acts giving rise to *a single violation* occurs outside of the limitations period," such that the continuing violation doctrine would apply. *Herrera v. City of Espanola*, 32 F.4th 980, 997 (10th Cir. 2022). Instead, the repeated violations doctrine applies because "each time a qualified individual with a disability encounters or actually become[s] aware of a non-compliant service, program, or activity and is thereby deterred from utilizing that service, program, or activity, he or she suffers discrimination and a cognizable injury." *Hamer*, 924 F.3d at 1107.

In *Hamer*, the Tenth Circuit noted an "important caveat" about the continuing violation doctrine, which is that "it is triggered by continual unlawful acts, not by continual ill effects from the *original violation*." *Hamer*, 924 F.3d at 1099 (emphasis added; internal quotations and citations omitted). Plaintiff's argument glosses over this important caveat. First, his argument is premised on the continual ill effects from an alleged original violation. This is seen in his argument that the CDOC's denial of his accommodation requests was the result of an official policy—under this theory, the alleged official policy is the original violation, while the subsequent accommodation denials are the ill effects of that alleged policy. *See* Dkt. 71, pp. 4 ("Defendant CDOC made a decision to deny Plaintiff ADA accommodation as a matter of CDOC policy[.]"), 6 (". . .Defendant Smith and Sanchez are policy makers and enforcers of CDOC ADA policy in this case, so their decisions to repeatedly deny

11

Plaintiff ADA accommodation were policy decisions and cannot be considered single discrete acts."), 8 ("[T]he ADA accommodation request Defendants denied were based on a series of connected unlawful acts (ADA denials) that were made by CDOC's head policy makers. In other words, no matter what [Plaintiff] requested, he was not to receive reasonable ADA accommodation. Thus, it was the official policy of the CDOC to treat [Plaintiff] differently than all other inmates and discriminate against him on a daily basis[.]").

Second, Plaintiff's allegations that the CDOC implemented an official policy to deny his accommodation requests sounds in municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). But as both Judge Varholak and Defendants have pointed out, the CDOC is an arm of the State of Colorado, and thus, a theory of municipal liability cannot apply. *Thompson v. Lengrich*, No. 18-cv-00588-RM-SKC, 2022 WL 1177840, at \*5 (D. Colo. Feb. 28, 2022) (citing Colo. Rev. Stat. § 24-1-128.5), *report and rec. adopted*, 2022 WL 910703 (D. Colo. Mar. 29, 2022), *aff'd*, 2023 WL 2028961 (10th Cir. 2023).

Finally, Plaintiff relies heavily on a footnote in the Tenth Circuit's opinion in *Brooks v. Colorado Dep't of Corr.*, 12 F.4th 1160, 1172 n.13 (10th Cir. 2021), to argue the Tenth Circuit "made clear that even where the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." Dkt. 71, p.5 (quoting *Brooks*, cleaned

12

up). But this discussion by the Tenth Circuit had nothing to do with the continuing violation or repeated violations doctrines, was a specific reference to municipal liability, was referenced in connection with the application of Eleventh Amendment immunity to Title II claims, and was dicta. *Brooks*, 12 F4th at 1172 n.13. Nothing in *Brooks* abrogates the Tenth Circuit's unequivocal holding in *Hamer*.

\* \* \*

For the reasons shared above, Plaintiff's objections are OVERRULED. The Court ACCEPTS and ADOPTS the Recommendation (Dkt. 70).

It is ORDERED that:

1. Defendants' Motion to Dismiss (Dkt. 50) is GRANTED and Plaintiff's § 1983 claims are DISMISSED WITH PREJUDICE;

2. Plaintiff's Title II ADA claim is DISMISSED WITH PREJUDICE for any alleged ADA violations that occurred before August 11, 2021;

3. Plaintiff is GRANTED LEAVE TO AMEND the Complaint for the sole purpose of amending his ADA claim to allege any ADA violations for the period between August 11, 2021, and August 16, 2021;

4. Plaintiff's amended complaint shall be filed no later than October 20, 2025; and,

5. Should Plaintiff fail to file an amended complaint by the above deadline, this matter will be dismissed and closed without further notice.

DATED: September 29, 2025

BY THE COURT:

_____
S. Kato Crews
United States District Judge